UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Richmond Division)

| | |
|---|---|
| **SPECTRUM SOUTHEAST, LLC**<br><br>**Plaintiff,**<br><br>v.<br><br>**CRAIG BURNS, in his capacity as Tax Commissioner, THE COMMONWEALTH OF VIRGINIA DEPARTMENT OF TAXATION,**<br><br>**Defendant.** | Civil Action No:   3:20cv605<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** |

## COMPLAINT

Plaintiff SPECTRUM SOUTHEAST, LLC ("Spectrum" or "Plaintiff"), by and through undersigned counsel, files this Complaint against Defendant Craig Burns, in his capacity as Tax Commissioner of the Commonwealth of Virginia Department of Taxation ("Defendant"), and alleges as follows:

## INTRODUCTION

1.      Spectrum brings this action to obtain a declaration that the Public Rights-of-Way Use Fee ("ROW Use Fee"), set forth in Va. Code § 56-468.1, which is collected and administered by Defendant, conflicts with and is preempted by the Federal Cable Communications Policy Act of 1984, 47 U.S.C. § 521 *et seq.* (the "Cable Act" or "Act"). Spectrum further seeks an injunction against the enforcement and collection of the ROW Use Fee by Defendant.

2. The Cable Act permits franchising authorities to charge cable operators a franchise fee of up to five percent (5%) of a "cable operator's gross revenues derived . . . from the operation of the cable system . . . ." 47 U.S.C. §§ 541(a)(2), 542(b).

3. A "franchise fee" is defined in the Cable Act as "*any* tax, fee, or assessment *of any kind* imposed by a franchising authority or other governmental entity on a cable operator or cable subscriber . . . solely because of their status as such," including for the use of the public rights-of-way. *Id.* § 542(g)(1) (emphases added). Other taxes, fees, and assessments of "general applicability" are not "franchise fees," but only if they are not unduly discriminatory against cable operators or cable subscribers. *Id.* § 542(g)(2)(A).

4. The ROW Use Fee is imposed on providers of cable services for their use of the municipal public rights-of-way. Va. Code § 56-468.1. The current rate of the ROW Use Fee is $1.15 per subscriber per month.

5. Defendant administers and collects the fee from cable service providers like Spectrum, and distributes the funds to the local jurisdictions where Spectrum provides its services. A list of those jurisdictions is attached as **Exhibit A**.

6. The ROW Use Fee is a franchise fee under the Cable Act because it is imposed on Spectrum for its use of the local rights-of-way.

7. The ROW Use Fee is not imposed on other video programming providers, such as satellite television companies, or streaming services, such as Netflix, which, like cable service providers, deliver their services over the public rights-of-way.

8. Because the ROW Use Fee is not imposed on other video programming service providers that compete with cable operators in Virginia, the ROW Use Fee is unduly discriminatory against cable operators.

9. In addition to the ROW Use Fee, Spectrum is required to pay an additional charge for the use of the same pubic rights-of-way in Virginia—the Commonwealth's Communications Sales and Use Tax ("CST").

10. The CST is imposed on Spectrum and its customers at the rate of five percent (5%) of Spectrum's total receipts from the sale of cable services and voice telecommunications services to Virginia subscribers. Va. Code Ann. § 58.1-648.

11. Spectrum collects the CST from its Virginia subscribers and pays the collected amounts to the Department of Taxation, which distributes the amounts to local governments for the use of the ROWs.

12. The amount of the ROW Use Fee that Spectrum pays to the Department of Taxation, combined with the amount of the CST that Spectrum pays to the Department of Taxation, exceeds five percent of Spectrum's gross revenues derived from the operation of its cable system.

13. The ROW Use Fee is therefore preempted by the Cable Act because, when combined with the CST, the ROW Use Fee exceeds the five percent cap on franchise fees authorized under the Cable Act.

14. The ROW Use Fee is also preempted under the Cable Act because it is an impermissible, additional franchise fee. Charter already pays franchise fees in the Commonwealth in the form of the CST and any additional franchise fee is therefore preempted by the Cable Act.

**PARTIES**

15. Spectrum is a subsidiary of Charter Communications, Inc., which is a cable communications service operator that, through its subsidiaries (collectively "Charter"), provides cable, high-speed internet, and wireline and wireless telecommunications services throughout the Commonwealth of Virginia.

3

16. Spectrum has its principal place of business at 12405 Powerscourt Drive, St. Louis, Missouri 63131.

17. Spectrum sells cable services and high-speed internet services to consumers and businesses in the Commonwealth of Virginia. Spectrum's affiliates Spectrum Advanced Services, LLC and Spectrum Mobile, LLC provide wireline and wireless voice services, respectively, to customers in the Commonwealth. Spectrum's affiliates Charter Fiberlink VA CCO, LLC and Time Warner Cable Business, LLC provide Ethernet services, i.e., a type of telecommunications service providing network connectivity, to customers in Virginia.

18. Spectrum and its affiliates provide all of their services in Virginia over Charter's cable plant, and collect and pay to Defendant the ROW Use Fee, on a per-subscriber basis, and the CST, based on their total customer revenues from the provision of cable and telecommunications services.

19. Defendant is the Tax Commissioner of the Commonwealth of Virginia Department of Taxation, which is an agency of the Commonwealth charged with the administration and enforcement of the ROW Use Fee.

20. Defendant also administers and collects the CST from cable and telecommunications service providers like Spectrum, and ratably distributes the money to local governments in Virginia, including the local governments listed in **Exhibit A**.

## JURISDICTION

21. The Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983 because it arises under the Cable Act.

22. The Court also has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are completely diverse in citizenship and the amount of

controversy exceeds $75,000.

23. An actual, justiciable controversy now exists between Plaintiff and Defendant under 28 U.S.C. § 2201(a). This Court may grant declaratory relief, injunctive relief, and other appropriate relief under 28 U.S.C. §§ 2201-2202 and the Court's equitable powers.

24. The Court also has jurisdiction under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908).

25. This lawsuit does not seek to enjoin, suspend, or restrain the assessment, levy, or collection of any tax.

## VENUE

26. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b), inter alia, because the acts and omissions giving rise to this action occurred in the Commonwealth.

## FACTUAL AND LEGAL BACKGROUND

**A.    The Cable Act**

27. Cable operators like Spectrum are subject to federal regulation under the provisions of the Cable Act.

28. The Federal Communications Commission ("FCC") is the administrative agency tasked with overseeing the Cable Act, and issuing regulations and administrative rulings to achieve the purposes of the Cable Act.

29. The Cable Act was enacted to establish a national public policy concerning cable communications. 47 U.S.C. § 521.

30. In enacting the Cable Act, Congress balanced the public's rights to free flowing information, the local government's interest in franchising and regulating cable operators, the

5

cable industry's desire for growth and stability, and the potential of satellite television to offer valuable competition. H.R. Rep. No. 98-934, 98th Cong., 2d Sess. 1984 ("Legislative History"), reprinted in 1984 U.S.C.C.A.N. 4655 (1984).

31.     The desire to "establish franchise procedures and standards which encourage the growth and development of cable systems" was one of the main purposes of the Cable Act. 47 U.S.C. § 521(2); Legislative History at 19.

32.     As a result, the Cable Act established "guidelines for the exercise of Federal, State, and local authority" intended to "promote competition in cable communications and minimize unnecessary regulation that would impose an undue economic burden on cable systems." 47 U.S.C. §§ 521(3) and (6).

33.     States and local franchise authorities ("LFAs") are required to operate within the confines of the Cable Act in the administration of state and local cable franchises. *Id.* §§ 521(3), 544(a) ("Any franchising authority *may not regulate* the services, facilities, and equipment provided by cable operator *except to the extent consistent with [the Cable Act].*" (emphasis added)).

34.     Any state or local law or regulation that would impose undue economic burden on cable systems is preempted and superseded by the Cable Act. *Id.* § 556(c).

35.     To help encourage the growth of cable systems, the Cable Act authorizes LFAs to award cable franchises to cable operators to use the public rights-of-way to construct and operate their systems. *Id.* § 541.

36.     In exchange for the award of the franchise and the use of the public right-of-way, the Cable Act authorizes the LFAs to charge a franchise fee. However, the amount of the franchise fee is capped at five percent (5%) of the cable operator's gross revenues derived from the operation

of its cable system to provide cable service. *Id.* §§ 541(a)(2), 542(b).

38. The five percent franchise fee permitted by the Cable Act is intended to fully compensate LFAs for the use of the public rights-of-way, regardless of whether a cable operator provides other services—including non-cable services—to customers over the same rights-of-way. *Id.* § 544(a).

38. "Franchise fee" is defined as "*any* tax, fee, or assessment *of any kind* imposed by a franchising authority or other governmental entity on a cable operator or cable subscriber . . . solely because of their status as such." *Id.* § 542(g)(1) (emphases added). A franchise fee does not include "any tax, fee, or assessment of general applicability (including any such tax, fee, or assessment imposed on both utilities and cable operators or their services but not including a tax, fee, or assessment which is unduly discriminatory against cable operators or cable subscribers)." *Id.* § 542(g)(2)(A).

39. In or about the mid-2000s, the FCC began reviewing LFAs' franchising processes, which the FCC found impeded enhanced cable competition and accelerated broadband deployment in many jurisdictions. *See generally* Implementation of Section 621(a)(1) of the Cable Communications Policy Act of 1984 as Amended by the Cable Television Consumer Protection and Competition Act of 1992, Local Franchising Notice of Proposed Rulemaking, MB Docket No. 05-311, FCC 05-189 (rel. Nov. 18, 2005).

40. On August 2, 2019, the FCC issued an Order to adopt rules and guidance intended to promote cable competition and broadband deployment in furtherance of the Cable Act's goals. *See, e.g.*, Implementation of Section 621(a)(1) of the Cable Communications Policy Act of 1984 as Amended by the Cable Television Consumer Protection and Competition Act of 1992, Third Report and Order, MB Docket No. 05-311, FCC 19-80 (rel. Aug. 2, 2019, eff. Sept. 27, 2019) (the

7

"FCC's Order").

41. The FCC's Order discusses the types of state and local taxes, fees, and other charges that are preempted by the Cable Act.

42. The FCC's Order clarifies, among other things, that:

  a) A franchise gives a cable operator the right or permission to provide any communications services over the cable franchise system. 47 U.S.C §§ 541, 542; FCC Order at ¶ 80 ("Both Congress and the Commission have recognized that the franchise fee is the core consideration that franchising authorities receive in exchange for the cable operator's right to access and use the rights-of-way.");

  b) Any additional fee for the right, license, or permission is imposed on a cable operator for its status as such and is thus impermissible. FCC Order at ¶ 91 ("Because a fee that a state or locality imposes on a cable operator's provision of non-cable services relates to the 'manage[ment] and operat[ion]" of its cable system, such fee is imposed on the cable operator 'solely because of [its] status' as a cable operator and is capped by section 622.");

  c) State and local taxes, fees, and other charges imposed on a cable operator for the provision of non-cable services over its franchised cable system (*e.g.*, those that result in additional obligations on the cable operator for its use of the same rights-of-ways) are preempted by the Cable Act. *Id.* at ¶¶ 66, 68 ("[T]he mixed-use rule . . . prohibit[s] LFAs from using their cable franchising authority to regulate any services other than cable services

     provided over the cable systems of any incumbent cable operator that is a common carrier.");

  d) "Any assessment on a cable operator for constructing, managing, or operating its cable system in the rights-of-way is subject to the 5-percent cap – even if other non-cable service providers (e.g., telecommunications or broadband providers) are subject to the same or similar access fees." *Id.* at ¶ 92;

  e) "The entire category of 'franchise fees' is subject to the five-percent cap, in distinction to generally-applicable taxes whose validity must be shown, at least in part, by their application to broader classes of entities or citizens beyond providers of cable and non-cable communications services." *Id.*

**B.** **The ROW Use Fee**

43. The ROW Use Fee is "imposed on all cable operators that use the public rights-of-way." Va. Code § 56-468.1(B)(2).

44. A "cable operator" is defined as "any person or group of persons that (i) provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such cable system or (ii) otherwise controls or is responsible for, through any arrangement, the management and operation of a cable system, whether or not the operator has entered into a franchise agreement with a locality." Va. Code §§ 56-468.1(A), 15.2-2108.1:1(A).

45. "Cable operator does not include a provider of wireless or direct-to-home satellite transmission service." *Id*.

46. The amount of the ROW Use Fee is computed annually by the Virginia Department of Transportation ("VDOT"). Va. Code § 56-468.1(B)(2). The fee is currently imposed at the rate of $1.15 per subscriber.

47. A cable operator is required to collect the fee on a per-subscriber basis by adding the fee to each ultimate end user's monthly bill for cable service. Va. Code § 56-468.1(G).

48. ROW Use Fees must be paid by cable operators to the Department of Taxation for deposit into the Communication Sales and Use Tax Trust Fund ("Fund"). Va. Code § 56-468.1(I). Revenue from the Fund may not be diverted to the Department of Taxation's General Fund.

49. Revenue from the Fund is distributed as follows: (i) the Department of Taxation recoups its direct costs of administering the Virginia CST; (ii) the Department for the Deaf and Hard-of-Hearing receives funds for the operation of the telephone relay service; (iii) local jurisdictions receive the franchise fee amounts relative to any cable franchise in effect as of January 1, 2007; and (iv) the remainder of the revenue in the Fund is allocated to the Commonwealth's counties, cities, and towns. Va. Code Ann. § 58.1-662.

**C.     The Commonwealth's Communications Sales and Use Tax**

50. The Commonwealth imposes its CST on customers of communications services in Virginia. Va. Code Ann. § 58.1-648(A).

51. The definition of "communications services" includes cable services as well as telecommunications services. Va. Code Ann. § 58.1-647.

52. The CST is imposed at the rate of five percent (5%) on the sales price of each communications service. Va. Code Ann. § 58.1-648(A).

53. "Sales price" means "the total amount charged in money or other consideration by a communications services provider for the sale of the right or privilege of using communications

services in the Commonwealth, including any property or other services that are part of the sale." Va. Code Ann. § 58.1-647.

54. The CST was enacted on January 1, 2007 to replace franchise fees that cable service providers paid to Virginia local jurisdictions for the use of their rights-of-way and to simplify the taxes and fees imposed on communications services and communications service providers. Va. Dep't of Taxation, Guidelines and Rules for the Virginia Communications Taxes, CT-2 (Nov. 1, 2006) ("CST Guidelines"), available at https://www.tax.virginia.gov/sites/default/files/taxforms/communications-taxes/any/ct-2-any.pdf (last visited June 11, 2020); *see also* Va. Code Ann. § 15.2-2108.1:1.

55. The Department of Taxation has stated that the CST replaced the local cable franchise fees. *See* CST Guidelines.

56. The CST must be paid by cable operators to the Department of Taxation for deposit into the Fund.

D.  **Spectrum's payment of the ROW Use Fee and CST**

57. Spectrum provides cable service, high-speed internet access, and voice (telecommunications) services to customers located in the Virginia local jurisdictions listed in **Exhibit A**.

58. Spectrum pays the ROW Use Fee it collects from its subscribers in the local jurisdictions listed in **Exhibit A** to the Department of Taxation, which, in turn, distributes the payments ratably to the local jurisdictions.

59. Spectrum pays the CST it collects from its Virginia cable service and telecommunications service subscribers in the local jurisdictions listed in **Exhibit A** to the Department of Taxation, which, in turn, distributes the payments ratably to the local jurisdictions.

## COUNT I

## THE ROW USE FEE VIOLATES THE CABLE ACT, 47 U.S.C. § 521 *et seq.*, BECAUSE WHEN COMBINED WITH THE AMOUNT OF THE CST, THE ROW USE FEE EXCEEDS THE FIVE-PERCENT LIMIT ON FRANCHISE FEES.

60. Spectrum realleges and incorporates by reference each and every allegation hereinabove set forth, with the same force and effect as if herein repeated and set forth at length.

61. The Cable Act prohibits an LFA's imposition of franchise fees in excess of five percent of a cable operator's gross revenue.

62. Under Virginia law, Spectrum is obligated to collect and remit to the Department of Taxation two fees for the use of the same public rights-of-way: the CST, at the rate of five percent of Spectrum's annual cable service and voice service revenue, and the ROW Use Fee, at the current rate of $1.15 per subscriber per month.

63. Both the CST and the ROW Use Fee are "franchise fees" as defined under the Cable Act.

64. The CST is a "franchise fee" under the Cable Act because: it is imposed on cable operators because of their status as such; it replaced local franchise fees; and it is used to compensate local governments for Spectrum's use of public rights-of-way. The CST proceeds are distributed to the localities, including an amount "equal to the total franchise fee paid to each locality with a cable franchise existing on the effective date." Va. Code Ann. § 58.1-662(A).

65. The ROW Use Fee is also a "franchise fee" under the Cable Act because it is imposed by a franchising authority "on cable operators for access to the rights of way in their capacity as franchisees."

66. The ROW Use Fee is not a tax of general applicability excepted from the definition of "franchise fee" because it is unduly discriminatory: it applies to video programming services

12

provided by cable operators, but it does not apply to competing video programming services provided by other types of providers (e.g., satellite service providers and streaming video programming service providers).

67. The combined imposition of the CST and the ROW Use Fee on Spectrum's revenues derived from the provision of cable services and voice services for the use of the same public rights-of-way exceeds five percent of Spectrum's gross revenues derived from the provision of cable services, prescribed under the Cable Act.

68. To the extent the ROW Use Fee exceeds the five-percent cap on franchise fees when added to the CST, the Fee violates Spectrum's federal right to protection from unnecessary regulation and undue discrimination under the Cable Act, and it is thus preempted under the Act.

## COUNT II

### THE ROW USE FEE VIOLATES THE CABLE ACT, 47 U.S.C. § 521 *et seq.*, BECAUSE IT IS AN ADDITIONAL FRANCHISE FEE FOR THE USE OF THE RIGHTS-OF-WAY.

69. Spectrum realleges and incorporates by reference each and every allegation hereinabove set forth, with the same force and effect as if herein repeated and set forth at length.

70. Under the Cable Act, any additional fee for the right, license, or permission to use local rights-of-way is imposed on a cable operator "solely because of their status as such" and is thus impermissible. FCC Order at ¶ 91.

71. Under Virginia law, Spectrum is obligated to pay the CST at the rate of five percent of its revenues from cable services and revenues from voice services.

72. The CST replaced local franchise fees and is distributed to the Commonwealth's local jurisdiction as compensation for the use of their public rights-of-way.

73. Spectrum is also required to collect and pay to the Department of Taxation the ROW Use Fee as an additional franchise fee for the use of the same rights-of-way.

74. The ROW Use Fee is therefore an impermissible, additional franchise fee for the same rights-of-way, without regard to the five-percent limitation prescribed under the Cable Act.

75. The ROW Use Fee thus violates Spectrum's federal right to protection from unnecessary regulation and undue discrimination under the Act, and is preempted by the Cable Act.

**COUNT III**

**THE ROW USE FEE IS PREEMPTED BY THE UNITED STATES CONSTITUTION AND THE CABLE ACT, 47 U.S.C. § 521 *et seq.***

76. Spectrum realleges and incorporates by reference each and every allegation hereinabove set forth, with the same force and effect as if herein repeated and set forth at length.

77. Under the Supremacy Clause of the United States Constitution, a state law that conflicts with federal law is preempted. U.S. Const. art. VI, cl. 2.

78. Federal law preempts inconsistent state law when Congress has expressed a clear intent to preempt state law; it is clear, despite the absence of explicit preemptive language, that Congress intended to occupy an entire field of regulation; and compliance with both state and federal law is impossible, or the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Capital Cities Cable Inc. v. Crisp*, 467 U.S. 691, 698-699 (1984).

79. The Cable Act expressly preempts conflicting state law, requiring that "[a]ny provision of law of any State, political subdivision, or agency thereof . . . which is inconsistent with [the Cable Act] shall be deemed to be preempted and superseded." 47 U.S.C. § 556(c).

80. The Cable Act established "a national policy that clarifies the current system of local, state and Federal regulation of cable television. This policy continues reliance on the local franchising process as the primary means of cable television regulation, while defining and limiting the authority that a franchising authority may exercise through the franchise process." Legislative History at 19.

81. By enacting the Cable Act, Congress raised regulation of cable service to the national level to ensure the national development of cable communications, while ceding back to the state and local franchising authorities certain limited powers. *Id.* at 22.

82. The ROW Use Fee conflicts with the Cable Act because it exceeds the five-percent limitation on franchise fees charged by LFAs on cable operator's gross revenue when combined with the CST; it is also an additional franchise fee for the use of the same rights-of-way; and, it is a discriminatory tax or fee that is not one of general applicability.

83. The ROW Use Fee is therefore preempted by the Act and the Supremacy Clause of the United States Constitution.

## COUNT IV

### DECLARATORY JUDGMENT

84. Spectrum realleges and incorporates by reference each and every allegation hereinabove set forth, with the same force and effect as if herein repeated and set forth at length.

85. Pursuant to 28 U.S.C § 2201, any federal court, "may declare the rights and other legal relations of any interested party seeking such declaration" and "[a]ny such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

86. There is a present controversy between Spectrum and Defendant because Defendant imposes the ROW Use Fee on Spectrum, and Spectrum contends the ROW Use Fee

violates Federal law and is therefore invalid.

87. Spectrum hereby requests a declaratory judgment, declaring that the ROW Use Fee conflicts with and is preempted by Federal law and, thus, unenforceable.

## COUNT V

### CIVIL ACTION FOR DEPRIVATION OF RIGHTS

88. Spectrum realleges and incorporates by reference each and every allegation hereinabove set forth, with the same force and effect as if herein repeated and set forth at length.

89. Pursuant to 42 U.S.C. § 1983, state agencies can be sued directly for monetary, declaratory, and injunctive relief to prevent violations of Federal law.

90. Spectrum alleges that the ROW Use Fee violates and is preempted by the Cable Act.

91. Spectrum also alleges that it will suffer loss of competitive neutrality as a result of the imposition of the ROW Use Fee on Spectrum's subscribers, but not on its competitors' subscribers.

92. Pursuant to 42 U.S.C. § 1983, Spectrum hereby requests declaratory and injunctive relief.

**WHEREFORE**, Plaintiff prays for relief as follows:

1. That the Court declare that the imposition of the ROW Use Fee violates and is therefore preempted by the Cable Act;

2. That the Court enjoin Defendant from enforcing and requiring collection of the ROW Use Fee by Spectrum from its subscribers;

3. That the Court order that until this matter is fully resolved, any ROW Use Fees collected by Spectrum from its subscribers be paid to the Court to be held in escrow

        and not be remitted directly to Defendant;

4.     That the Court award Plaintiff reasonable attorneys' fees and costs; and

5.     That the Court award such other and further relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED this 5th day of August 2020.

                                        **EVERSHEDS SUTHERLAND (US) LLP**

                        By:   */s/ Matthew Gatewood*
                              Matthew Gatewood (VSB No. 89843)
                              700 Sixth Street, NW, Suite 700
                              Washington, DC 20001-3980
                              Phone: (202) 383-0122
                              Fax: (202) 637-3593
                              matthewgatewood@eversheds-sutherland.com

                              Eric S. Tresh
                                  (*Pro Hac Vice* Application Pending)
                              Maria M. Todorova
                                  (*Pro Hac Vice* Application Pending)
                              999 Peachtree Street, NE, Suite 2300
                              Atlanta, GA 30309
                              Phone: (404) 853-8000
                              erictresh@eversheds-sutherland.com
                              mariatodorova@eversheds-sutherland.com

                              *Counsel for Spectrum Southeast, LLC*